DAVIDOFF HUTCHER & CITRON LLP
*Attorneys for the Debtors*
605 Third Avenue
New York, New York 10158
(212) 557-7200
Robert L. Rattet, Esq.
Jonathan S. Pasternak, Esq.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
In re:                                                                    Chapter 11

F&O SCARSDALE LLC, ET AL.,[1]                          Lead Case No. 20-22808(SHL)
                                                                          (Jointly Administered)

                                           Debtors.
-----------------------------------------------------------X

## DISCLOSURE STATEMENT

## I. INTRODUCTION

The above-captioned debtors and debtors-in-possession, F&O Scarsdale, LLC ("Scarsdale"), Luxury Dining Group LLC ("LDG"), Fig & Olive Holding LLC ("Holding"), Fig & Olive USA Inc. ("USA"), F&O Lexington LLC ("Lexington"), Fig & Olive Thirteen Street LLC ("Thirteen"), Fig & Olive Fifth Avenue LLC ("Fifth"), F&O Houston LLC ("Houston"), F&O Newport Beach LLC ("NPB"), F&O Melrose Place Inc. ("MP") and F&O Los Angeles Inc. ("LA"; collectively, the "Debtors") submits this First Amended Disclosure Statement ("Disclosure Statement") pursuant to Section 1125(b) of the Bankruptcy Code and Bankruptcy Rule 3017 in connection with their Joint Chapter 11 Plan of Reorganization ("Plan") dated February __, 2021 to all known holders of Claims[2] against or Interests in the Debtors in order to adequately disclose

---

[1] *Jointly administered with Luxury Dining Group LLC, Fig & Olive Holding LLC, Fig & Olive USA Inc., F&O Lexington LLC, Fig & Olive Thirteen Street LLC, Fig & Olive Fifth Avenue LLC, F&O Houston LLC, F&O Newport Beach LLC, F&O Melrose Place Inc. and F&O Los Angeles Inc.*

[2] *Unless otherwise defined herein, capitalized terms shall have the same meaning ascribed to them in the Plan.*

information deemed to be material, important and necessary for the Debtors' creditors to make a reasonably informed judgment about the Plan. A copy of the Plan is attached hereto as Exhibit "A."

The Bankruptcy Court has [approved this Disclosure Statement] and scheduled a hearing to consider confirmation of the Plan for **April __, 2021 at 11:00 a.m**. (the "Confirmation Hearing"). Under Section 1126(b) of the Bankruptcy Code, only Classes of Allowed Claims that are "impaired" under the Plan, as defined by Section 1124 of the Bankruptcy Code, are entitled to vote on the Plan. Generally, a Class is impaired if its legal, contractual or equitable rights are altered under the Plan. Class 2 Non-Insider Unsecured Creditors under the Plan are impaired and therefore are entitled to vote.

To be accepted by a Class, the Plan must be accepted by more than one half in number and two-thirds in dollar amount of the Allowed Claims actually voting in such Class.

Accompanying this Amended Disclosure Statement are copies of the following documents (**Exhibits A, B, C and D):**

A.      **The Plan**;

B.      **Current Consolidated Balance Sheet of the Debtors;**

C.      **Current Consolidated Liquidation Analysis of the Debtors; and**

D.      **Financial Projection of the Reorganized Debtors' Operations.**

**THE COURT HAS NOT APPROVED THE PLAN AND THIS DISCLOSURE STATEMENT IS NOT TO BE CONSTRUED AS AN ENDORSEMENT OF THE PLAN BY THE BANKRUPTCY COURT. CREDITORS ARE URGED TO CONSULT WITH THEIR COUNSEL REGARDING THE PLAN.**

**BALLOTS ACCEPTING OR REJECTING THE PLAN MUST BE MAILED , HAND DELIVERED OR E-MAILED TO DAVIDOFF HUTCHER & CITRON LLP, 120 BLOOMINGDALE ROAD, SUITE 100, WHITE PLAINS, NY 10605, ATTN: JONATHAN S. PASTERNAK, ESQ. OR TO JSP@DHCLEGAL.COM SO AS TO BE RECEIVED ON**

**OR BEFORE 4:00 P.M. EASTERN TIME, ON APRIL ___, 2021 FOR THEM TO BE CONSIDERED.**

**YOUR VOTE ON THE PLAN IS IMPORTANT.**

### BACKGROUND

The Debtors were founded originally in 2003 by Laurent Halaz. In 2017, Guillaume Fonkenell became the majority owner of the Debtors following an equity transaction; and continues to be the majority owner. Mr. Fonkenell had been a member of the Debtors since 2006. FIG & OLIVE was founded as a French Mediterranean upscale casual restaurant group. FIG & OLIVE Lexington Inc was the first operating entity that opened in 2005.

Mr. Fonkenell provided substantial capital and financing to the Debtors over the years; and the majority of the capital and financing since 2017.

From 2005 to 2018 FIG & OLIVE opened and currently operates 9 restaurants in 5 different markets across the US. In 2015, FIG & OLIVE opened its 8th location in Washington DC and shortly following the opening a Salmonella outbreak occurred in the DC and Melrose Place stores. The negative press triggered a downfall in revenue, and recoveries quickly depleted cash in the following months resulting in a transition of ownership to Guillaume Fonkenell. From 2017-2019, the company underwent a series of executive leadership changes as it worked to rebuild and stabilize. Since in or around 2015, and ongoing to today, the debtors have been plagued by lawsuits both related to the outbreak, as well as a series of frivolous employee law suits the settlement of which, have created a culture of copycat suits in CA and NY. Following the most recent executive leadership change in mid-2019, the organization saw its best performance resulting in initial repayments of the loans financed by Mr. Fonkenell. In March 2020, a series of Stay at Home orders were put into place as a result of the COVID-19 pandemic crisis starting in early March, 2020. During this time FIG & OLIVE was forced to close all operating units in compliance with civil

mandates. To conserve cash during the closure period, over 700 employees were laid off or furloughed with only 34 employees remaining on staff at a reduced salary. After months of no receipts, and reopening restrictions forcing us to operate at reduced capacities in the 4 restaurants we have been able to resume some level of operating, FIG & OLIVE has depleted cash reserves. With the unknown timeline on when capacity restrictions will be lifted, and the impact the COVID-19 crisis will have on consumer behavior, FIG & OLIVE looked to restructure its long-term contractual obligations.

As of the Petition Date, the Debtors leased and, prior to COVID-19, operated the following restaurants[3]:

696 White Plains Rd., Scarsdale, New York;
808 Lexington Avenue, NY, NY;
10 East 52nd Street, NY, NY ("Fifth Avenue");
420 W. 13th Street, NY, NY ("Thirteenth Street");
Houston Galleria III, Houston, TX;
650 North La Cienga Boulevard, Los Angeles, California ("Melrose Place"); and
151 Newport Center Dr., Newport Beach, CA.

Due to COVID-19 governmental restrictions, all of the restaurants were initially closed, with certain of the restaurants being permitted to partially re-open. However, the Debtors were not able to feasibly re-open their restaurants at Scarsdale, Lexington and Melrose Place.

The Debtors cash reserves depleted, despite significant pre-petition loans made by Mr. Fonkenell totaling approximately $7 million.

Moreover, the Debtors were mired in spurious litigation with several former employees, further draining the Debtors' capital with no hope of resolution of the underlying claims in sight.

The Debtors therefore determined, in their business judgment, to utilize the Bankruptcy process under Chapter 11 to raise additional capital, restructure its obligations, determine what

---

[3] *The Debtors also operated out of headquarters located at 254 W. 31st Street, New York, NY. The Debtors, in order to reduce overhead and recurring expenses, rejected this lease at the onset of the Chapter 11 Cases.*

lease locations are viable and potentially profitable, and liquidate disputed litigation claims in an efficient and cost effective manner so that the Debtors may emerge as a reorganized and continuing business to the benefit of their creditors, equity and customers alike.

### A.    The Chapter 11 Filings

In order to preserve its assets and otherwise reorganize and restructure its affairs, on July 3, 2020 (the "Petition Date"), the Debtors each filed a voluntary petition for reorganization pursuant to Chapter 11 of the Code. The Debtors have continued in possession of their property and the management of their business affairs as debtors-in-possession pursuant to Sections 1107 and 1108 of the Code.

At the onset of the Chapter 11 Cases, the Bankruptcy Court entered an order authorizing the joint administration of the Chapter 11 Cases for procedural purposes only under lead case no. 20-22808.

### 1.    Employment of the Debtors' Professionals

On August 6, 2020, the Court entered an order authorizing the employment of Davidoff Hutcher & Citron LLP as attorneys for the Debtors pursuant to Section 327(a) of the Code. On August 6, 2020 the Court entered an order authorizing the employment retention of CohnReznick LLP as accountants to the Debtors.

### 2.    Filing of Schedules of Assets and Liabilities and Statement of Financial Affairs

On July 30, 2020, the Debtors each filed Schedules of Assets and Liabilities, together with Statement of Financial Affairs (collectively, the "Schedules"). The Schedules are available on the Bankruptcy Court's website: www.nysb.uscourts.gov. (login/password required).

3.      Establishment of a Claims Bar Date and Claims Process; No Avoidance Actions

Pursuant to an Order of the Bankruptcy Court, September 21, 2020 was established as the last date by which non-governmental creditors may file proofs of claim in the Chapter 11 Cases ("Bar Date"), and subsequently notice of the Bar Date was served on, inter alia, all creditors listed on the Debtors' creditor matrixes and Schedules filed with the Bankruptcy Court as well as parties filing notices of appearance and creditors who had previously filed a proof of claim in the Chapter 11 Cases. The Debtors, together with counsel, have heretofore reviewed all Claims filed.

The Debtors have also reviewed their books and records to determine if any causes of action or claims for preferential or fraudulent transfer and determined that no such causes of action or claims exist, as  the Debtors were substantially in "shut down" mode for several months prior to the Petition Date due to COVID-19.

**B.      The Debtors' Efforts to Restart Business Operations**

Over the past several months, the Debtors have renegotiated, or attempted to renegotiate, all of their restaurant leases in an effort to recommence operations.

1.      Assumption/Rejection/Modification of the Debtors' Restaurant Leases.

To that end, the Debtors negotiated lease assumption and modification agreements with respect to the Houston, Thirteenth Street, Fifth Avenue and Newport Beach restaurants.

The Debtors have heretofore rejected the leases for 31st Street (former headquarters, Scarsdale and Lexington Avenue, with the Debtors deciding not to renew the lease for Melrose Place, which expired on July 31, 2020.

The Debtors have partially re-opened their remaining locations and are seeking new locations for future growth and expansion.

2.      DIP Loan Agreements.

The Bankruptcy Court has authorized the Debtors to borrow up to an aggregate of $5.3 million from Guillaume Fonkenell pursuant to Section 364(b) of the Code pursuant to Interim and Final Orders of the Court.

As a result of obtaining the approvals, the Debtors had sufficient monies on hand to pay all ongoing expenses and post-petition administrative obligations and are now in a position to put forth a reorganization plan.

## THE PLAN OF REORGANIZATION

THE FOLLOWING IS A SUMMARY OF THE PLAN; THE TERMS OF THE PLAN GOVERN, AS THE PLAN REPRESENTS A PROPOSED LEGALLY BINDING AGREEMENT. CREDITORS ARE URGED TO CONSULT WITH THEIR COUNSEL IN ORDER TO FULLY UNDERSTAND THE PLAN AND TO MAKE AN INFORMED JUDGMENT CONCERNING IT.

The Plan will be funded with a combination of the Debtor's cash on hand on the Confirmation Date, derived from both the DIP Loans and additional, post-Effective Date loans to be made by Guillaume Fonkenell. These funds are expected to be sufficient to pay all Allowed Administrative and Priority Claims in full, as well as to fund an 8% distribution to the holders of Allowed Non-Insider Unsecured Claims within 30 days after the Effective Date, and the Reorganized Debtors shall effectuate all payments due under the Plan. THE DEBTORS STRONGLY RECOMMEND THAT CREDITORS ACCEPT THE PLAN.

**A.      Treatment of Unclassified Claims Under the Plan.**

1.      Allowed Administrative Claims other than DIP Loans Claims and Claims of Professionals: The Debtors expect to be current in all of their post-Petition Date expenses and, therefore, does not anticipate any Allowed Administrative Claims on the Confirmation Date with the exception of Administrative Claims of the Professionals and Mr. Fonkenell with respect to the

DIP Loans. However, to the extent that any such Claims should exist, they shall be paid in the ordinary course and according to the terms and conditions of the respective contracts underlying such Claims.

2.     Allowed DIP Loans Claims: Subject to the Confirmation Order becoming a Final Order, and the Plan becoming effective, Guillaume Fonkenell shall agree to modify the DIP Loan agreements to provide for repayment of the balances in an amount equal to 90% of the Reorganized Debtors' Cash on hand in excess of $2,500,000 at the end of each calendar year commencing in 2021 and continuing until repaid in full. The Allowed DIP Loans Claims equal $5,300,000.

3.     Allowed Administrative Claims of Professionals: Allowed Administrative Claims of the Professionals shall be paid, in full, in Cash, upon the later of (i) allowance by the Court pursuant to Section 330 of the Bankruptcy Code or (ii) the Effective Date, or as soon thereafter as is reasonably practicable. The Administrative Claims of Professionals consist of those of (a) Davidoff Hutcher & Citron LLP, attorneys for the Debtors, in the approximate amount net unpaid amount as of the Confirmation Date of $100,000 and (b) CohnReznick LLP, accountants for the Debtors, in the approximate amount net unpaid amount as of the Confirmation Date of $125,000.

4.     Statutory Fees: Under the Plan, all United States Trustee statutory fees arising under 28 U.S.C. §1930 and 31 U.S.C. §3717 shall be paid in full, in Cash, in such amount as they are incurred in the ordinary course of business by the Debtors or the Reorganized Debtors. The Reorganized Debtors shall be responsible for the payment of United States Trustee quarterly fees through the entry of a final decree closing the Chapter 11 Cases. The Debtors are current in the payment of all US Trustee fees to date.

5.     Allowed Priority Tax Claims: The Debtors shall pay, in full and in cash, all Allowed Priority Tax Claims pursuant to Section 507(a)(8) of the Bankruptcy Code) on or shortly

after the Effective Date. The Debtor believes there are approximately $126,000 in Allowed Priority Tax Claims.

**B.      Treatment of Classified Claims Under the Plan.**

CLASS 1 – Priority Claims: Class 1 consists of the Allowed Priority Claims other than Allowed Tax Claims. The Claims consist primarily of claims for unreturned customer deposits, entitled to priority up the amount of $3,025 per individual pursuant to Section 507(a)(7) of the Code. Allowed Class 1 Claims total in the aggregate approximately $165,000. Allowed Class 1 Claims either (a) be paid in full in Cash within thirty (30) days after the Effective Date or (b) may elect to waive its right to distribution in exchange for re-booking his or her event and leaving his or her deposit on account with the Debtors, with such deposit to still be refundable in the event that the event is not rescheduled. The Allowed Class 1 Claims are unimpaired under this Plan and deemed to accept this Plan.

CLASS 2 – Allowed General Non-Insider Unsecured Claims: Class 2 consists of the holders of Allowed Non-Insider Unsecured Claims including any Allowed Claims of landlords arising out of the rejection of unexpired leases or executory contracts. Allowed Class 2 Claims total approximately $7,187,500. Holders of Allowed Unsecured Claims shall each receive a total Cash distribution equal to 8% of such Allowed Unsecured Claims within thirty (30) days after the Effective Date. Treatment under this Section shall be in full and final satisfaction of all Class 2 Claims. Allowed Class 2 Claims are impaired under this Plan and holders of such Claims shall be entitled to vote on this Plan.

CLASS 3 – Allowed Insider Unsecured Claims: Class 3 consists of  the Allowed Insider Unsecured Claim of Guillaume Fonkenell in the approximate Allowed amount of $7,000,000. The holder of the Allowed Insider Unsecured Claim shall be deemed to waive its right to distribution

subject to confirmation of the Plan. Allowed Class 3 Claims are Impaired under this Plan but any accepting vote by the Class 3 claimholder may not be considered for purposes of confirming the Plan.

CLASS 4 – Equity Interests: Class 4 consists of the Allowed Interests in the Debtors. Other than LDG, Scarsdale, Thirteenth and Fifth Avenue, who have various individual members (see Schedules), the sole member of the other Debtors is LDG. Subject to acceptance of the Plan by Class 2 and 3, the Interests, other than the Interests in Thirteen and Fifth, shall remain unaffected by this Plan and shall remain in full force in effect as to the Reorganized Debtors. The Class 4 Interests in Thirteen and Fifth shall be redistributed 100% to USA in consideration of (a) Mr. Fonkenell's funding commitment under this Plan (b) Mr. Fonkenell's waiver of right to distribution on account of his Class 3 Claim. The holders of Class 4 Interests, other than the holders of Interests in Fifth and Thirteenth, are unimpaired under and deemed to accept the Plan. Wine & Cheese LLC, Yoram Shemesh and Ed Somekh, the minority Interest holders in Thirteen and Fifth, are deemed to reject the Plan.

**C.     Provisions Regarding Corporate Governance and Management of the Debtors Post-Confirmation.**

1.     Post-confirmation Management of Debtor.  Following the Effective Date, Alexis Blair shall continue to serve as CEO of the Reorganized Debtors at an initial annual salary of $205,000.

2.     Corporate Action. Upon the entry of the Confirmation Order, all matters provided under the Plan involving the corporate structure of the Debtors shall be deemed authorized and approved without any requirement of further action by the Debtors, the Debtors' shareholders and/or members, or the Debtors' boards of directors, managers, and/or managing members.

**D.**     **Resolution of Disputed Claims & Reserves.**

(a)     <u>Objections</u>. An objection to the allowance of a Claim or Administrative Claim shall be in writing and may be filed with the Bankruptcy Court by the Debtor or any other party in interest on or before the Effective Date, subject to an extension of such deadline by the Bankruptcy Court, for cause.

(b)     <u>Amendment of Claims</u>. A Claim may be amended after the Confirmation Date only as agreed upon by the Debtors and the holder of such Claim and as approved by the Bankruptcy Court or as otherwise permitted by the Code and Bankruptcy Rules.

(c)     <u>Reserve for Disputed Claims</u>. The Debtors shall reserve, on account of each holder of a Disputed Claim, that property which would otherwise be distributable to such holder on such date and thereafter were such Disputed Claim an Allowed Claim on the Effective Date, or such other property as the holder of such Disputed Claim and the Debtor may agree upon. The cash so reserved for the holder, to the extent such Disputed Claim is Allowed, and only after such Disputed Claim becomes a subsequently Allowed Claim, shall thereafter be distributed as provided in Section 4.1 of the Plan to such holder, in the amount allocable under Sections 3.1-3.2 of the Plan to such Allowed Claim.

(d)     <u>Claims Estimation</u>. The Debtors may, at any time, request that the Bankruptcy Court estimate any Disputed Claim pursuant to Section 502(c) of the Bankruptcy Code, regardless of whether the Debtors have previously objected to such Claim, and the Bankruptcy Court retains jurisdiction to estimate any Claim at any time, including, without limitation, during litigation concerning any objection to such Claim. In the event that the Bankruptcy Court estimates any Disputed Claim, that estimated amount constitutes either the Allowed amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court. If the estimated

amount constitutes a maximum limitation on such Claim, the Debtors may elect to pursue any supplemental proceedings to object to any ultimate payment of such Claim.

(e)    <u>Distributions to Holders of Subsequently Allowed Claims</u>. Unless another date is agreed on by the Debtors and the holder of a particular subsequently Allowed Claim, the Debtors shall, within ten (10) days after an Order resolving the Disputed Claim becomes a Final Order, distribute to such holder with respect to such subsequently Allowed Claim that amount, in cash, from the cash held in reserve for such holder and, to the extent such reserve is insufficient, from any other source of cash otherwise available to the Debtors, equal to that amount of cash which would have been distributed to such holder from the Effective Date through such distribution date had such holder's subsequently Allowed Claim been an Allowed Claim on the Effective Date. The holder of a subsequently Allowed Claim shall not be entitled to any interest on the Allowed Amount of its Claim.

(f)    <u>Disputes Regarding Rights to Payments or Distribution</u>. In the event of any dispute between and among claimants (including the entity or entities asserting the right to receive the disputed payment or distribution) as to the right of any entity to receive or retain any payment or distribution to be made to such entity under the Plan, the Debtors may, in lieu of making such payment or distribution to such entity, remit the disputed portion of the Claim into an escrow account or to a distribution as ordered by a court of competent jurisdiction as the interested parties to such dispute may otherwise agree among themselves. Notwithstanding anything to the contrary, the Debtors shall make distributions on account of the undisputed portion of a Claim to such claimants.

(g)    <u>Claims Procedures Not Exclusive</u>. All of the aforementioned Claims objection, estimation and resolution procedures are cumulative and not necessarily exclusive of one another.

On and after the Effective Date, Claims which have been estimated may subsequently be compromised, settled, withdrawn, or otherwise resolved without further order of the Bankruptcy Court.

**E.      Amendment, Modification, Withdrawal or Revocation of the Plan.**

The Debtors reserve the right, in accordance with the Section 1127 of the Code, to amend or modify the Plan and to seek the authorization of the Bankruptcy Court as may be required.

The Debtors may withdraw or revoke the Plan prior to the Confirmation Date. If such a withdrawal or revocation occurs, or if Confirmation does not occur, the Plan will be null and void. In such event, nothing contained in the Plan will constitute a waiver or release of any Claim by or against the Debtors or any other person or to prejudice in any manner the rights of the Debtor or any other person in any further proceedings involving the Debtors.

**F.      Unclaimed Property.**

Except as otherwise provided herein, in the event any claimant fails to claim any distribution within 120 days from the date of such distribution, such claimant shall forfeit all rights thereto, and to any and all future payments, and thereafter the Claim for which such cash was distributed shall be treated as a disallowed Claim. Distributions to claimants entitled thereto shall be sent to their last known address set forth on a proof of claim filed with the Bankruptcy Court or, if no proof of claim is filed, on the Schedules filed by the Debtors or to such other address as may be later designated by a creditor in writing. The Debtors shall use their best efforts to obtain current addresses for all claimants. All unclaimed cash shall be returned to the reorganized Debtors.

G.       **Discharge and Plan Injunction.**

*Upon the Effective Date, the Debtors shall receive a discharge to the extent provided for under Section 1141 of the Bankruptcy Code. Except as otherwise expressly provided in the Plan, any and all entities who have held, hold or may hold Claims or Interests, including Administrative Claims, against or in the Debtors shall, as of the Effective Date, be enjoined from:*

*(a)       commencing, conducting, or continuing, in any manner, any suit, action, or other proceeding of any kind (including, without limitation, in any judicial, arbitral, administrative or other forum) against the Debtors or reorganized Debtors with regard to such entities' Claim against the Debtors;*

*(b)       enforcing, levying, attaching (including, without limitation, any pre-judgment attachment), collection or otherwise recovering by any manner or means, whether directly or indirectly, or any judgment, award, decree, or order against the Debtor or reorganized Debtors with regard to such entities' Claim against the Debtors;*

*(c)       creating, perfecting or otherwise enforcing, in any manner, directly or indirectly, any encumbrance of any kind against the Debtors or reorganized Debtors, the property of the Debtors or reorganized Debtors, or any successor-in-interest to the Debtors or reorganized Debtors with regard to such entities' Claim against the Debtors;*

*(d)       asserting any set off, right of subrogation or recoupment of any kind, directly or indirectly, against any obligation due the Debtors, the property of the Debtors, or any successor-in-interest to the Debtors with regard to such entities' Claim against the Debtors; and*

*(e)       acting in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Plan.*

14

### H.    Exculpation.

*Neither Guillaume Fonkenell, the Debtors nor any of their shareholders, officers, directors, employees, attorneys, advisors, agents, representatives and assigns (the "Released Parties") shall have or incur any liability to any entity for any action taken or omitted to be taken in connection with or related to the formulation, preparation, dissemination, Confirmation or consummation of the Plan, the Amended Disclosure Statement or any contract, instrument, release or other agreement or document created or entered into, or any other action taken or omitted to be taken in connection with this chapter 11 case or the Plan except with respect to its obligations under the Plan and any related agreement, with the exception of any such act or omission taken in bad faith, willful misconduct, gross negligence, breach of fiduciary duty, malpractice, fraud, criminal conduct, unauthorized use of confidential information that causes damages, and/or ultra vires acts. Notwithstanding any other provision hereof, nothing in the Plan shall (a) effect a release of any claim by the United States Government or any of its agencies or any state and local authority whatsoever, including, without limitation, any claim arising under the Internal Revenue Code, the environmental laws or any criminal laws of the United States or any state and local authority against the Debtors or any of the Released Parties, nor shall anything in the Plan enjoin the United States or any state or local authority from bringing any claim, suit, action or other proceedings against any Released Party for any liability whatever, including, without limitation, any claim, suit or action arising under the Internal Revenue Code, ERISA, the environmental laws or any criminal laws of the United States or any state and local authority, including the New York Tax Law, nor shall anything in Article VIII of the Plan exculpate any party from any liability to the United States Government or any of its agencies, or any state*

*and local authority, including New York State Department of Taxation and Finance whatsoever, including liabilities arising under the Internal Revenue Code, ERISA, the environmental laws or any criminal laws of the United States or any state and local authority, including the New York Tax Law, against the Parties referred to herein, or (b) limit the liability of the Professionals pursuant to Rule 1.8(h)(1) of the New York Rules of Professional Conduct.*

**I.      Full and Final Satisfaction.**

Pursuant to the Plan, all payments and all distributions thereunder shall be in full and final satisfaction, settlement, release and discharge of all Claims and Interests, except as otherwise provided in the Plan.

**J.      Retention of Jurisdiction.**

The Bankruptcy Court shall retain jurisdiction of the Chapter 11 Case:

(a)      To determine all controversies relating to or concerning the allowance and/ or distribution on account of such Claims or Interests, upon objection thereto, such Claims by any party in interest, including the estimation of Claims under Section 502(c) of the Code;

(b)      To determine requests for payment of Claims entitled to priority under Section 507(a)(2) of the Code, including any and all applications for compensation for professional fees and expenses;

(c)      To determine any and all applications, adversary proceedings, and contested or litigated matters over which the Bankruptcy Court has subject matter jurisdiction pursuant to 28 U.S.C Sections 157 and 1334;

(d)      To determine all disputed, contingent or unliquidated Claims;

(e)      To determine requests to modify the Plan pursuant to Section 1127 of the Code

or to remedy any defect or omission or reconcile any inconsistencies in this Plan or Confirmation Order to the extent authorized by the Code;

(f)    To make such orders as are necessary or appropriate to carry out the provisions of, and enforce, the Plan;

(g)    To resolve controversies and disputes regarding the interpretation or enforcement of the terms of the Plan; and

(h)    To enter a final decree closing the Chapter 11 Cases.

**K.    Contracts and Unexpired Leases.**

Any unexpired lease or executory contract that has not been previously assumed, rejected and/or modified by order of the Bankruptcy Court or has not naturally expired during the course of the Chapter 11 Cases shall, as of the Effective Date, be deemed to have been assumed by the Debtors. This shall include all modified contracts entered into concerning equipment leases and financing between the Debtors and equipment lessors. Because the Debtors believes that they are current under such contracts, the Debtors do not anticipate any cure payments due as a result of the assumption of the agreements. **Parties to executory contracts or unexpired leases must assert a cure payment owing (other than payments owing in the ordinary course), before the Confirmation hearing date, subject to the Debtors' right to object to the assertion of such payment, or they will not receive a cure payment in connection with such assumption.**

**L.    Post-Confirmation Fees, Final Decree.**

The reasonable compensation and out-of-pocket expenses incurred post-Confirmation Date by the Professionals shall be paid by the Reorganized Debtors within twenty (20) days upon presentation of invoices for such post-Confirmation Date professional services.

All disputes concerning post-Confirmation Date fees and expenses shall be subject to

Bankruptcy Court jurisdiction.

A final decree closing the Chapter 11 Cases shall be entered as soon as practicable after distributions have commenced under the Plan.

**M.    Continuation of Bankruptcy Stays.**

All stays provided for in the Chapter 11 case under Section 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Effective Date.

**N.    Avoidance and Recovery Actions**.

As of and subject to the occurrence of the Effective Date, the Debtors will waive and release any causes of action under Sections 544, 547, 548, 550, 551 and 553 of the Bankruptcy Code, except that such waiver shall not extend to any defense asserted by the Debtors pursuant to Section 502(d) of the Bankruptcy Code to a Claim. The Debtors believes, after a thorough investigation and review with its counsel, that there are no such causes of action that would provide a meaningful source of funds for the Debtors' estates.

## FINANCIAL INFORMATION

**A.    The Debtors' Schedules of Assets and Liabilities**. Schedules of the Debtors' assets and liabilities and monthly operating reports have been filed with the Clerk of the Court and may be inspected by all interested parties.

**B.** **The estimated amounts required to be paid on (or within 30 days after) the Effective Date are:**

| | |
|---|---|
| Professional Fees & Expenses | $225,000.00 |
| Other Administrative Expense Claims | $27,631.92 |
| Priority Tax Claims: | $126,000.00 |
| Class 1 Priority Claims | $165,000.00 |
| 8% Class 2 Unsecured Creditor Dividend | $575,000.00 |

**Estimated Total Required/Shortly After on Effective Date:**      **$1,118,631.92**

The payments required on Confirmation shall be funded with the Debtors' cash on hand, proceeds from the DIP Loan, if any are remaining, and post-Effective Date additional loans from Mr. Fonkenell. Such post-Effective Date loan shall be repaid in an amount equal to 10% of the Reorganized Debtors' Cash on hand in excess of $2,500,000 at the end of each calendar year commencing in 2021and continuing until repaid in full.

**C.** **Chapter 7 Liquidation Analysis.** If the Chapter 11 Cases were converted to cases under Chapter 7 of the Bankruptcy Code and the Debtors' assets were liquidated by a Chapter 7 trustee, the holders of, inter alia, Class 2 Unsecured Claims would receive no distribution. Thus, the Debtors believes that the Plan satisfies the "best interests of creditors" test under Section 1129(a)(7) of the Code. As clearly set forth in the liquidation analysis prepared by the Debtor and annexed hereto as Exhibit "C", in a Chapter 7 liquidation, the Administrative Claims would be substantially higher than in a Chapter 11 due a variety of factors. First, a Chapter 7 trustee would be entitled to earn commissions and would hire his/her own professionals (e.g. legal counsel and financial advisor), which would result in additional expenses payable from the estate. Second, all operations would cease, and the Debtors would default under their respective restaurant leases,

resulting in additional claims which would further reduce any chance of distribution to the unsecured creditors. Finally, the Debtors have current outstanding post-Petition payables which would result in additional Administrative Claims in the event of a conversion and termination of the business. In addition, the, inter alia, $5,300,000 DIP Loan Claim, the $225,000 in Professional Fees, the approximate $27,631 in other Administrative Claims and the approximate $291,000 in Priority Claims would all be payable ahead of Unsecured Claims. In addition, Mr. Fonkenell's $7 million Unsecured Claim would not be waived in a Chapter 7 scenario, drastically diminishing and diluting any potential distribution to unsecured creditors in a Chapter 7 scenario. These substantial additional Claims mean that there would be no distribution to unsecured creditors in the event of a liquidation. Therefore, the Debtors have satisfied Section 1129(a)(7) of the Bankruptcy Code, which requires that creditors receive a recovery under the Plan as they would receive in a hypothetical Chapter 7 case. Under the Plan, Unsecured Creditors are receiving 8% of their Allowed Claims.

**THE DEBTORS THEREFORE STRONGLY RECOMMEND ACCEPTANCE OF THE PLAN. CREDITORS ARE URGED TO CONSULT WITH THEIR ATTORNEYS AND AMONGST THEMSELVES IN DETERMINING WHETHER TO ACCEPT OR REJECT THE PLAN.**

## **CONFIRMATION PROCEDURE**

A.    **Time to Vote.** Pursuant to a Court order, ballots on the Plan must be filed on or before April __, 2021. All ballots should be properly completed as to whether the creditor accepts or rejects the Plan and be forwarded, in accordance with the instructions on the ballot, to Davidoff Hutcher & Citron LLP, 120 Bloomingdale Road, Suite 100, White Plains, NY 10605, Attn: Jonathan S. Pasternak, Esq., or via email to jsp@dhclegal.com.

B.    **Solicitation of Votes.** Any holder of a Claim in Class 2 is entitled to vote if either

(i) such holder's Claim has been scheduled by the Debtor in the Schedules filed with the Bankruptcy Court (provided that such Claim has not been scheduled as disputed, contingent or unliquidated), or (ii) such holder has filed a proof of Claim on or before September 21, 2020, the Bar Date (or, if not filed by such date, any proof of Claim filed with leave of the Bankruptcy Court), unless an objection to such Claim has been duly filed, or if the Bankruptcy Court has provisionally allowed the Claim for voting purposes. A vote may be disregarded if the Bankruptcy Court determines, after notice and a hearing, that an acceptance or rejection was not solicited or procured or made in good faith or in accordance with the provisions of the Bankruptcy Code.

**C.    Acceptance.** Class 2 will be deemed to have accepted the Plan if the Plan is accepted by at least two-thirds in dollar amount and more than one-half in number of the holders of Claims actually voting of such Class. **Any ballot which is executed by the holder of a Class 2 Claim but which does not indicate an acceptance or rejection of the Plan, shall be deemed an acceptance of the Plan.**

**D.    Confirmation Hearing.** The Code requires the Bankruptcy Court to hold a hearing on the Debtor's request for Confirmation of the Plan after the ballots have been cast. The Confirmation Hearing has been scheduled for April __, 2021 at 11:00 a.m. in the United States Bankruptcy Court for the Southern District of New York, 300 Quarropas Street, White Plains, New York via telephonic conference only. Parties wishing to appear at the Confirmation Hearing must register in advance with Court Solutions at www.court-solutions.com. The Confirmation Hearing may be adjourned from time to time by the Bankruptcy Court without further notice except for an announcement of the adjournment made at the Confirmation Hearing. At the Confirmation Hearing, the Bankruptcy Court will:  (i) determine whether the Plan has been

accepted by the requisite majorities of each voting class; (ii) hear and determine all objections to the confirmation of the Plan; (iii) determine whether the Plan meets the requirements of the Bankruptcy Code and has been proposed in good faith; and (iv) confirm or refuse to confirm the Plan.

**E.      Time to Objection to Amended Disclosure Statement and the Plan.** The last date to object to confirmation of the Plan is April __, 2021. Objections must be filed and served as set forth in the Order accompanying the Disclosure Statement.

**F.      Statutory Requirements for Confirmation of the Plan**. At the Confirmation Hearing, the Debtors will request that the Bankruptcy Court determine that the Plan satisfies the requirements of Section 1129 of the Bankruptcy Code. If it does so, the Bankruptcy Court shall enter an order confirming the Plan. Some of the applicable requirements of Section 1129 of the Bankruptcy Code are as follows:

(a)      The Plan must comply with the applicable provisions of the Bankruptcy Code;

(b)      The Debtors must have complied with the applicable provisions of the Bankruptcy Code;

(c)      The Plan has been proposed in good faith and not by any means forbidden by law;

(d)      Any payment made or promised to be made by the Debtors under the Plan for services or for costs and expenses in, or in connection with, the Chapter 11 Cases, or in connection with the Plan and incident to the Chapter 11 Cases, has been disclosed to the Bankruptcy Court, and any such payment made before confirmation of the Plan is reasonable, or if such payment is to be fixed after confirmation of the Plan, such payment is subject to the approval of the Bankruptcy Court as reasonable;

(e)      The Debtors have disclosed the identity and affiliation of any individual proposed

to serve, after confirmation of the Plan, as a director, officer, or voting trustee of the Debtors under the Plan. Moreover, the appointment to, or continuance in, such office of such individual, is consistent with the interests of holders of Claims and Interests and with public policy.

(f)    <u>Feasibility</u>: The Bankruptcy Code requires that in order to confirm the Plan, the Bankruptcy Court must find that confirmation of the Plan is not likely to be followed by liquidation or the need for further financial reorganization of the Debtors (the "Feasibility Test").

For a plan to meet the Feasibility Test, the Bankruptcy Court must find that the Debtors will possess the resources to meet its obligations under the Plan. The Debtors intend to show that it will have sufficient funds on hand at Confirmation and projected thereafter to satisfy its cash obligations under the Plan and as such, the feasibility requirement would be satisfied. Moreover, the Debtors do not anticipate the need for further financial reorganization based upon the significant cost cutting measures that it has undertaken and its successful identification and focus on the most profitable aspects of its business. The Debtors' projections annexed hereto as Exhibit "D" illustrate the Debtors' anticipated income and expenses going forward, which estimates are conservatively based upon the Debtors' hopes for resumption of full operations over the next two years.

The Debtors believes that the Plan satisfies all of the statutory requirements of Chapter 11 of the Code, including the Feasibility Test, that it is "fair and equitable," "does not discriminate unfairly," and has been proposed in good faith.

(g)    <u>Absolute Priority Rule</u>. A plan cannot be confirmed under Section 1129 of the Bankruptcy Code if it provides for the retention of interests by the equity holders on account of such interests while senior classes of claims do not receive full payment.

**SINCE THE PLAN PROVIDES FOR CLASS 2 UNSECURED CREDITORS TO RECEIVE LESS THAN 100% DISTRIBUTION, THE PLAN MUST BE ACCEPTED BY CLASS 2 IN ORDER TO BE CONFIRMED.**

G.     **Objections to Confirmation.** Objections to confirmation must be in writing and specify in detail the name and address of the objector, all grounds for the objection and the amount of the Claim held by the objector. Any such objection must be filed with the Bankruptcy Court and served upon the following, with a copy to the Bankruptcy Court's chambers, so that it is received by them on or before April __, 2021, as set forth in the Order which accompanies this Amended Disclosure Statement:

Davidoff Hutcher & Citron LLP
*Attorneys for the Debtors*
120 Bloomingdale Road, Suite 100
White Plains, New York 10605
Attn: Jonathan S. Pasternak, Esq.
jsp@dhclegal.com

Objections to confirmation of the Plan are governed by Federal Rule of Bankruptcy Procedure 9014.

H.     **Continuation of Bankruptcy Stays.** All stays provided for in the Chapter 11 Case under Section 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Effective Date.

I.     **Re-vesting of Assets.** Except as otherwise provided by the Plan, upon the Effective Date, title to all properties and assets of the Debtors shall vest in the Reorganized Debtors free and clear of all Claims, liens, encumbrances and Interests and the Confirmation Order shall be a judicial determination of discharge and extinguishment of all Claims, liens or Interests (except those created or retained pursuant to the Plan).

**J.**        **Conditions to Effective Date of the Plan.** The Plan shall not become effective unless and until the Confirmation Order in form and substance reasonably acceptable to the Debtors, the DIP Lender, and the United States Trustee shall have been entered by the Bankruptcy Court and shall have become a Final Order.

**K.**        **Alternatives to Confirmation and Consummation of the Plan.**  If the Plan is not confirmed and consummated the alternatives include: (i) preparation and presentation of an alternative plan of reorganization; (ii) liquidation of the Debtors under Chapter 7 of the Bankruptcy Code; or (iii) dismissal of the Chapter 11 Cases, which would result in all creditor claims and rights of collection and enforcement being restored in full.

**L.**        **Post-Confirmation.**    The Debtors shall be responsible for filing post-Confirmation Date reports with the Bankruptcy Court and shall pay all quarterly fees required under 28 U.S.C. Section 1930(a)(6) and 31 U.S.C. §3717 until the earlier of (a) conversion or dismissal of the Chapter 11 Cases or (b) entry of a final decree closing the Chapter 11 Cases.

The Debtors shall also be responsible for the filing of pre-Confirmation and post-Confirmation reports, until a final decree is entered. A final decree shall be entered as soon as practicable after distributions have commenced under the Plan.

**M.**        **Tax Consequences.**

(a)        <u>Tax Consequences of Confirmation</u>. Confirmation may have federal income tax consequences for the Debtor and holders of Claims and Interests. The Debtors have not obtained and does not intend to request a ruling from the Internal Revenue Service (the "IRS"), nor has the Debtor obtained an opinion of counsel with respect to any tax matters. Any federal income tax matters raised by confirmation of the Plan are governed by the Internal Revenue Code

and the regulations promulgated thereunder. The Debtors, creditors and holders of Interests are urged to consult their own counsel and tax advisors as to the consequences to them, under federal and applicable state, local and foreign tax laws, of the Plan. The following is intended to be a summary only and not a substitute for careful tax planning with a tax professional. The federal, state and local tax consequences of the Plan may be complex in some circumstances and, in some cases, uncertain.  Accordingly, each holder of a Claim or Interest is strongly urged to consult with his or her own tax advisor regarding the federal, state and local tax consequences of the Plan, including but not limited to the receipt of cash under this Plan.

(b)    <u>Tax Consequences to the Debtors</u>. The Debtors may not recognize income as a result of the discharge of debt pursuant to the Plan because Section 108 of the Internal Revenue Code provides that taxpayers in bankruptcy cases do not recognize income from discharge of indebtedness. However, a taxpayer is required to reduce its "tax attributes" by the amount of the debt discharged. Tax attributes are reduced in the following order: (i) net operating losses; (ii) general business credits; (iii) capital loss carryovers; (iv) basis in assets; (v) passive activity loss and credit carryovers; and (vi) foreign tax credit carryovers.

## RECOMMENDATION

The Debtors believe that Confirmation of the Plan is preferable to any of the alternatives described above. The Plan will provide greater recoveries than those available in liquidation to all holders of Claims. Any other alternative would cause significant delay and uncertainty, as well as substantial administrative costs.

**THUS, THE DEBTORS STRONGLY RECOMMEND HOLDERS OF ALL CLAIMS VOTE TO ACCEPT THE PLAN. THE FOREGOING IS A BRIEF SUMMARY OF THE PLAN AND SHOULD NOT BE RELIED ON FOR VOTING PURPOSES. THE PLAN REPRESENTS A PROPOSED LEGALLY BINDING AGREEMENT BETWEEN THE DEBTOR AND ITS CREDITORS AND SHOULD BE READ TOGETHER WITH THIS AMENDED DISCLOSURE STATEMENT IN ORDER THAT AN INTELLIGENT AND INFORMED JUDGMENT CONCERNING THE PLAN CAN BE MADE.**

Dated: New York, New York
          February 24, 2021

F&O SCARSDALE, LLC
LUXURY DINING GROUP LLC
FIG & OLIVE HOLDING LLC
FIG & OLIVE USA INC.
F&O LEXINGTON LLC
FIG & OLIVE THIRTEEN STREET LLC
FIG & OLIVE FIFTH AVENUE LLC                DAVIDOFF HUTCHER & CITRON LLP
F&O HOUSTON LLC                             *Attorneys for the Debtors*
F&O NEWPORT BEACH LLC                       605 Third Avenue
F&O MELROSE PLACE INC. and                  New York, New York 10158
F&O LOS ANGELES INC.                        (212) 557-7200


By: */s/ Alexis Blair*                      By: */s/ Robert L. Rattet*
     Alexis Blair, CEO                           Robert L. Rattet